```
 1                  UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                         AUSTIN DIVISION

 3   ROBERT CLINTON BUCY, ET AL    ) Docket No. A 15-CA-244 SS
                                   )             A 15-CA-245 SS
 4                                 )             A 15-CA-1040 SS
                                   )             A 15-CA-1041 SS
 5                                 )             A 15-CA-1042 SS
                                   )             A 15-CA-1043 SS
 6                                 )             A 16-CA-575 SS
                                   )             A 16-CA-599 SS
 7                                 )
     vs.                           ) Austin, Texas
 8                                 )
     BRENT STROMAN, MANUEL CHAVEZ, )
 9   ABELINO "ABEL" REYNA,         )
     AND JOHN DOE                  ) June 3, 2016
10
                       TRANSCRIPT OF MOTION HEARING
11               BEFORE THE HONORABLE SAM SPARKS

12   APPEARANCES:

13   For the Plaintiff:        Mr. Don Tittle
                               Law Offices of Don Tittle, PLLC
14                             6301 Gaston Avenue, Suite 440
                               Dallas, Texas 75214
15
     For Brent Stroman         Mr. Michael W. Dixon
16   and Manuel Chavez:        Mr. Charles D. Olson
                               Haley & Olson
17                             510 North Valley Mills Drive,
                               Suite 600
18                             Waco, Texas 76710

19   For Abelino Reyna:        Mr. Thomas P. Brandt
                               Fanning, Harper, Martinson,
20                             Brandt & Kutchin, P.C.
                               Two Energy Square
21                             4849 Greenville Avenue, Suite 1300
                               Dallas, Texas 75206
22
     Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
23                             501 West 5th Street, Suite 4153
                               Austin, Texas 78701
24                             (512)391-8792

25   Proceedings reported by computerized stenography, transcript
     produced by computer.
```

| | | |
|---|---|---|
| 08:54:39 | 1 | THE COURT:  All right.  The Court calls 15-CA-1040, |
| 08:54:45 | 2 | Bucy vs. Stroman, et al, 15-CA-1041, 15-CA-1042, 15-CA-1043, |
| 08:54:58 | 3 | 15-CA-244, 15-CA-245, 16-CA-575, and 16-CA-599. |
| 08:55:10 | 4 | I think y'all represent all of these cases, so just |
| 08:55:15 | 5 | make your announcements. |
| 08:55:20 | 6 | MR. TITTLE:  Your Honor, I'm Don Tittle on behalf of |
| 08:55:22 | 7 | the plaintiffs. |
| 08:55:25 | 8 | MR. BRANDT:  Your Honor, Tom Brandt on behalf of Abel |
| 08:55:27 | 9 | Reyna. |
| 08:55:31 | 10 | MR. OLSON:  Your Honor, my name is Charles Olson.  I'm |
| 08:55:33 | 11 | from Waco and I represent Chief Stroman and Manuel Chavez. |
| 08:55:40 | 12 | MR. DIXON:  Your Honor, I'm Mike Dixon.  I'm with Mr. |
| 08:55:43 | 13 | Olson's firm representing the same parties. |
| 08:55:45 | 14 | THE COURT:  All right.  It looks to me like it's kind |
| 08:55:47 | 15 | of catch-22, unless things are happening that I don't know. |
| 08:55:51 | 16 | That's the reason I called this little pow-wow. |
| 08:55:55 | 17 | Here, we've got lawsuits wherein the chief of police, |
| 08:56:04 | 18 | policemen and district attorney are sued, which would normally |
| 08:56:11 | 19 | mean that I can't do anything in this case until the criminal |
| 08:56:15 | 20 | case is over.  And I noticed in the paper where they're seeking |
| 08:56:21 | 21 | to disqualify the district attorney, but that won't eliminate the |
| 08:56:26 | 22 | problem.  So the criminal case won't be able to proceed because |
| 08:56:31 | 23 | the defendants have a personal interest.  I can't proceed because |
| 08:56:37 | 24 | of the criminal case. |
| 08:56:40 | 25 | So if y'all have any novel way of trying to break up |

08:56:43    1    this logjam, I'll be glad to listen to you, but I don't see

08:56:47    2    anything until the -- somebody comes in outside of Waco to

08:57:01    3    prosecute these cases.  But I'll be glad to listen to you.

08:57:05    4            MR. BRANDT:  Your Honor, Tom Brandt for Abel Reyna.

08:57:10    5            I think the newspaper article that you're referring to

08:57:12    6    is probably referring to a motion that's been recently filed and

08:57:16    7    set for hearing in Waco.

08:57:18    8            THE COURT:  Well, that's the reason.

08:57:20    9            MR. BRANDT:  That is set for a hearing on, I believe,

08:57:23   10    June 13th.

08:57:25   11            THE COURT:  And who's going to hear that?

08:57:27   12            MR. BRANDT:  That's going to be heard by the judge

08:57:30   13    there, but there is a special prosecutor that's being sworn in to

08:57:35   14    represent Abel Reyna and to resist the disqualification motion.

08:57:47   15            THE COURT:  So this is in the state court.

08:57:49   16            MR. BRANDT:  It's in state court, so that will be

08:57:50   17    resolved one way or the other very quickly.

08:57:52   18            THE COURT:  Is that with a Waco state judge?

08:57:56   19            MR. BRANDT:  Waco state judge.

08:57:58   20            THE COURT:  All right.

08:57:59   21            MR. BRANDT:  And I've been in touch, of course, with

08:58:01   22    Abel Reyna and the special prosecutor who is going to be

08:58:04   23    appointed shortly to deal with that situation, officially

08:58:07   24    appointed.  But from my perspective, of course, I think that the

08:58:14   25    disqualification will -- well, I don't know what the district

08:58:17   1   judge will do.  But it will be decided presumably on or near the

08:58:24   2   date of the hearing, which is going to be June 13th and 14th.

08:58:28   3   They've set two days to hear that.

08:58:30   4        THE COURT:  Now, is it the theory that the special

08:58:33   5   prosecutor will take over entirely the prosecution?

08:58:37   6        MR. BRANDT:  I don't think so.

08:58:40   7        Currently, that special prosecutor is just being hired

08:58:44   8   to handle that particular hearing, that is, the disqualification

08:58:50   9   hearing.  Now, if the disqualification hearing is unsuccessful

08:58:57   10  for Mr. Reyna, in other words, if he is disqualified, then --

08:59:01   11       THE COURT:  Now, who is Reyna?

08:59:04   12       MR. BRANDT:  Reyna is the DA and that's who I

08:59:06   13  represent.

08:59:07   14       THE COURT:  Yeah.

08:59:08   15       MR. BRANDT:  So it probably -- given the current

08:59:12   16  circumstance, I suppose that decision in that case.

08:59:16   17       THE COURT:  Will be appealed.

08:59:19   18       MR. BRANDT:  Well, but --

08:59:20   19       THE COURT:  Will be appealed.

08:59:21   20       You know, I've tried cases in Waco in the early '60s.

08:59:26   21  I'm very familiar with the way things happen in Waco, and right

08:59:28   22  now, I don't even have a judge there.  I've got Judge Pitman

08:59:31   23  going down there handling the civil cases.  He's disqualified

08:59:35   24  from handling criminal cases.

08:59:37   25       MR. BRANDT:  All I really wanted to --

| | | |
|---|---|---|
| 08:59:38 | 1 | THE COURT:  That's the only judge I've got available. |
| 08:59:40 | 2 | MR. BRANDT:  All I really wanted to add is, since you |
| 08:59:43 | 3 | mentioned this newspaper article, to let you know what I knew |
| 08:59:45 | 4 | about the hearing.  It is June 13th. |
| 08:59:48 | 5 | THE COURT:  I appreciate it.  It's just something that |
| 08:59:50 | 6 | came out from the -- actually, it was, I think, taken from the |
| 08:59:55 | 7 | Waco paper, but I don't remember.  It was in the Austin paper. |
| 08:59:59 | 8 | MR. TITTLE:  Your Honor, there's an important |
| 09:00:02 | 9 | consideration, I think, bears on this issue.  Certainly I would |
| 09:00:07 | 10 | agree if this were a normal case, criminal case waits, we see |
| 09:00:11 | 11 | what happens.  Clear.  I think it's equally clear it's anything |
| 09:00:17 | 12 | but a normal case. |
| 09:00:19 | 13 | There have -- in addition to the six that are in front |
| 09:00:22 | 14 | of you now, there have been other cases filed, three of which are |
| 09:00:25 | 15 | unindicted.  It's been more than a year.  Their conditions of |
| 09:00:28 | 16 | bond have been discharged.  And as of this morning, there are |
| 09:00:31 | 17 | three additional that fall in that category that have been filed |
| 09:00:33 | 18 | that reside in Austin.  So that's six individuals of which this |
| 09:00:38 | 19 | issue of wait until the criminal case is resolved wouldn't apply, |
| 09:00:44 | 20 | unless we were to wait until -- |
| 09:00:48 | 21 | THE COURT:  Oh, come on, counsel.  I'm not a child. |
| 09:00:51 | 22 | They're going to say you can't get into your |
| 09:00:54 | 23 | investigation.  They're going to say that you can't have any |
| 09:00:57 | 24 | interviews with people.  You're going to be -- sit there with -- |
| 09:01:02 | 25 | crippled.  You have your clients that could testify.  They may |

| | | |
|---|---|---|
| 09:01:05 | 1 | get subpoenas to testify in any criminal cases. |
| 09:01:09 | 2 | MR. TITTLE:  Okay.  Let me -- |
| 09:01:10 | 3 | THE COURT:  I have cases all the time where the police |
| 09:01:12 | 4 | take the position that they're not going to allow any discovery, |
| 09:01:17 | 5 | or anybody deposed, or anybody talked to, and I have to wait |
| 09:01:23 | 6 | until those criminal cases are over.  There's not anything I can |
| 09:01:27 | 7 | do about it. |
| 09:01:27 | 8 | MR. TITTLE:  Right.  And I understand.  I really was |
| 09:01:29 | 9 | commenting more -- |
| 09:01:30 | 10 | THE COURT:  I don't think it's going to take long.  The |
| 09:01:32 | 11 | law's very clear. |
| 09:01:34 | 12 | If you've got an interest in the case -- you know, I |
| 09:01:38 | 13 | tried two cases with Racehorse Haynes.  I've had the civil |
| 09:01:42 | 14 | liability, I had the criminal liability, and on the first day of |
| 09:01:45 | 15 | trial, he disqualified the district attorney and the police |
| 09:01:51 | 16 | officers because he had caused some -- they were being sued. |
| 09:01:57 | 17 | Now, they were being sued by the special prosecutor.  So he had a |
| 09:02:01 | 18 | pecuniary interest. |
| 09:02:04 | 19 | But these people have a substantial interest.  They're |
| 09:02:07 | 20 | being sued in their personal as well as official capacities. |
| 09:02:16 | 21 | Plus the fact I've got -- of course, the first thing I've got to |
| 09:02:22 | 22 | decide is the venue question.  And I have half of the Waco cases, |
| 09:02:32 | 23 | anyway, and have had since '91.  The only ones I always send back |
| 09:02:37 | 24 | are twofold.  I send back -- what is the little community that |
| 09:02:43 | 25 | has a lot of litigation on the other side of Waco as you drive |

09:02:49  1  through?

09:02:51  2          MR. OLSON:  I'm trying to think, your Honor.

09:02:53  3          THE COURT:  It's part of Waco, but it's got a

09:02:56  4  different --

09:02:57  5          MR. OLSON:  Bellmead.

09:02:59  6          THE COURT:  Bellmead is one.

09:03:01  7          MR. OLSON:  Yeah.

09:03:01  8          THE COURT:  I always send those cases back.

09:03:03  9          I get an awful lot of medical cases.  And I get some

09:03:09  10  substantial cases from the military in Killeen, and if they're

09:03:15  11  appropriate, can be handled generally by magistrates for a while

09:03:20  12  and I send those back.  You know, a lot of people don't like to

09:03:29  13  litigate in Waco.  Haven't wanted to litigate in Waco for some

09:03:34  14  time.

09:03:35  15          So I don't know what I'm going to do, but it will be a

09:03:41  16  hearing where I'll take some evidence, but I don't think I can

09:03:48  17  set them now.  Now, if you disqualified a district attorney, you

09:03:53  18  still have the police officers, and I don't think they're going

09:04:02  19  to come in here and testify on behalf of their motions.  That's

09:04:06  20  why I've asked you lawyers to be here.

09:04:09  21          MR. TITTLE:  Well, again, with the caveat that it's an

09:04:11  22  extremely unusual case, the whole situation, I don't know that --

09:04:19  23  you're suggesting that --

09:04:20  24          THE COURT:  I don't have any suggestion.  Until you

09:04:24  25  eliminate one of the two problems, there's not much anybody can

09:04:27  1  do.

09:04:27  2          MR. TITTLE:  You're suggesting, though, that this case

09:04:29  3  can't proceed as long as any criminal cases are pending because

09:04:32  4  the DA or the police officers won't be able to testify.  This is

09:04:36  5  -- they are charged -- these individuals are charged with crimes

09:04:40  6  in which there was a lifetime statute of limitations.  At some

09:04:44  7  point, the people that are unindicted that we believe were

09:04:47  8  falsely arrested, surely they don't have to wait until the entire

09:04:52  9  150 cases that have been indicted so far, every single one of

09:04:55  10  them have been tried, or we would suggest that they don't.

09:04:59  11          So it is because of that unusual situations, I think

09:05:03  12  there are reasons why a number of these civil cases should go

09:05:08  13  forward, and if they're going forward, there's really no reason

09:05:11  14  that even the ones who have been indicted couldn't go forward.

09:05:14  15  Granted, there's the risk that if they were found guilty, work

09:05:18  16  done on that particular case would be for naught.  I understand

09:05:21  17  that and recognize that.  I would be bearing a substantial part

09:05:26  18  of that risk myself.

09:05:27  19          But of the ones who are unindicted who there is no

09:05:29  20  criminal case against, I don't think that the law would

09:05:32  21  require --

09:05:32  22          THE COURT:  How are you going to get into the discovery

09:05:34  23  with any of their investigation, any of their statements by their

09:05:39  24  own people, any of the statements by anybody that's not a police

09:05:45  25  officer?  Their investigation -- how are you going to get any of

09:05:48  1  that?  They're going to have the criminal law exemption, and I'm

09:05:50  2  going to have to honor it.

09:05:51  3        MR. TITTLE:  My clients filed the suit.  They're not --

09:05:54  4  I disagree entirely with the defense.  They're not going to be

09:05:57  5  taking the Fifth Amendment.  They have nothing to take the Fifth

09:05:59  6  Amendment on.

09:05:59  7        Almost all of these individuals gave substantial

09:06:03  8  statements to the police the night that they were detained.

09:06:05  9        THE COURT:  You're talking about your clients.

09:06:07  10        MR. TITTLE:  And others.

09:06:08  11        THE COURT:  I'm not worried about your clients.

09:06:09  12        MR. TITTLE:  Well, I -- okay.  And as far as the police

09:06:12  13  officers, I don't know of a legal prohibition against an officer

09:06:16  14  giving testimony as to the -- whether statements in his affidavit

09:06:20  15  for probable cause are true.  I don't know of any prohibition

09:06:23  16  against that while there's a criminal case pending.  He's already

09:06:25  17  testified in multiple examining trials.  There's no reason I can

09:06:32  18  think of.

09:06:32  19        I understand your concerns about the DA, himself,

09:06:35  20  testifying, but I think, or I would assume, there would be

09:06:39  21  concerns about him giving a deposition while there's a criminal

09:06:41  22  case going and there's work product --

09:06:43  23        THE COURT:  His problem is he's got an interest in the

09:06:45  24  litigation.  He's being sued over here for it.

09:06:48  25        MR. TITTLE:  I think all of these matters could be

| | | |
|---|---|---|
| 09:06:49 | 1 | handled with some kind of protective order.  But with regard to |
| 09:06:52 | 2 | the police officers and the chief and the officers that have been |
| 09:06:56 | 3 | sued, I don't know of any reason or prohibition against them |
| 09:06:58 | 4 | testifying in a civil case while there are 150 or 60 criminal |
| 09:07:04 | 5 | cases pending. |
| 09:07:05 | 6 | For example -- |
| 09:07:05 | 7 | THE COURT:  Why don't you want to brief that for me? |
| 09:07:08 | 8 | Because I've been -- I've been at this job 26 years and I've been |
| 09:07:12 | 9 | trying cases 53 years. |
| 09:07:14 | 10 | MR. TITTLE:  I understand. |
| 09:07:14 | 11 | THE COURT:  And I've never seen a civil case allowed to |
| 09:07:21 | 12 | be trial when the criminal case is pending, particularly when |
| 09:07:23 | 13 | it's a criminal case that's had a lot of publicity.  And this one |
| 09:07:30 | 14 | has had sufficient publicity.  So I'll let you -- you know, next |
| 09:07:37 | 15 | couple of weeks, give me a letter opinion and send counsel. |
| 09:07:44 | 16 | MR. TITTLE:  I'll be happy to brief it.  I think -- and |
| 09:07:46 | 17 | the last thing I'll say on this. |
| 09:07:48 | 18 | The defendants -- the Court's really raising a question |
| 09:07:50 | 19 | that wasn't even really raised by the defense in their motion. |
| 09:07:55 | 20 | Their suggestion was more, stand down on the criminal cases |
| 09:07:57 | 21 | because if they end up being convicted or conviction, then that's |
| 09:08:00 | 22 | done. |
| 09:08:01 | 23 | THE COURT:  I understand.  This is my thinking. |
| 09:08:02 | 24 | MR. TITTLE:  Right. |
| 09:08:03 | 25 | THE COURT:  Because of my -- what happens in the past. |

| | | |
|---|---|---|
| 09:08:07 | 1 | And, you know, in addition to that, if I set your case today for |
| 09:08:15 | 2 | trial, it's April of 2018.  I am booked solid, 20 civil jury |
| 09:08:21 | 3 | cases every single month.  Judge Yeakel and I have the heaviest |
| 09:08:28 | 4 | civil-weighted docket in the United States, and a lot of those |
| 09:08:33 | 5 | are patents cases, which take two weeks to try.  Used to take |
| 09:08:37 | 6 | five or four.  We've got them down to two. |
| 09:08:41 | 7 |          And I'm concerned of what I'm going to do with all |
| 09:08:48 | 8 | these cases.  It's just going to be a discretionary move to send |
| 09:08:56 | 9 | it back to Waco.  And, you know, you've got some residents here. |
| 09:09:06 | 10 | It's not an open-and-shut area, but as soon as I open it, I've |
| 09:09:11 | 11 | got all sorts of motions coming.  You know, I know what's going |
| 09:09:20 | 12 | to happen and I think if you sit down and think it -- but you're |
| 09:09:23 | 13 | not going to get any cooperation from any of these folks, nor |
| 09:09:26 | 14 | their employees, right now. |
| 09:09:28 | 15 |          MR. TITTLE:  Could I make one more comment? |
| 09:09:30 | 16 |          THE COURT:  That's why I invited you here. |
| 09:09:31 | 17 |          MR. TITTLE:  Okay.  Thank you. |
| 09:09:33 | 18 |          First of all, the discovery that's been produced in the |
| 09:09:37 | 19 | criminal cases is so substantial that there couldn't be any more |
| 09:09:40 | 20 | discovery hardly.  But that's -- and that's already been |
| 09:09:43 | 21 | disclosed.  So that's that.  The trials -- |
| 09:09:47 | 22 |          THE COURT:  Been disclosed how?  Just in the papers? |
| 09:09:49 | 23 |          MR. TITTLE:  In the form of produced to the various |
| 09:09:51 | 24 | criminal defendants.  And so, it's been produced, everybody has |
| 09:09:55 | 25 | it.  It is so much an amount of -- a hundred-thousand pages. |

09:10:00   1          THE COURT:  There wasn't a protective order or an

09:10:02   2   agreement not to share?

09:10:04   3          MR. TITTLE:  There were for some lawyers signed that,

09:10:06   4   other lawyers refused to sign it and it would be turned over.

09:10:09   5   Under Texas law, the prosecutor cannot have the lawyer sign a

09:10:12   6   confidentiality order on that, and so, I got it without signing a

09:10:15   7   confidentiality order and would not sign it.

09:10:17   8          But your trial docket is one reason, in fact, these

09:10:21   9   cases should go forward.  If they are to sit for two or three

09:10:24   10  years, I think longer than that for all of this stuff to work its

09:10:27   11  way through the system, these individuals who you know this

09:10:33   12  backstory on this, they wouldn't have a trial until

09:10:38   13  2020-something.  We just think that there has to be some form of

09:10:43   14  just --

09:10:44   15          THE COURT:  The criminal trial has to occur.  As soon

09:10:47   16  as the criminal trial has occurred, then --

09:10:51   17          MR. TITTLE:  There's 150 of them charged.  I mean, it's

09:10:54   18  going to take them years to go through that mess.

09:10:57   19          THE COURT:  Well --

09:10:58   20          MR. TITTLE:  It might -- half of these clients --

09:10:59   21          THE COURT:  -- I rather suspect that you're going to

09:11:01   22  get through that fairly quickly.

09:11:04   23          MR. TITTLE:  Your optimism is more -- I think it's

09:11:11   24  reasonable to at least think there's a possibility this could be

09:11:14   25  multiple years till he's wrapped this up.  He's got a problem.

| | | |
|---|---|---|
| 09:11:18 | 1 | THE COURT:  That's right. |
| 09:11:19 | 2 | MR. TITTLE:  They haven't even set a single trial date, |
| 09:11:21 | 3 | your Honor.  It's been more than a year.  The last thing I'll say |
| 09:11:24 | 4 | in terms of -- |
| 09:11:24 | 5 | THE COURT:  They're going to have to pretty quick.  Of |
| 09:11:26 | 6 | course, they're going to have -- may have new people in it.  I |
| 09:11:29 | 7 | don't know one way or the other.  And then, of course, the next |
| 09:11:31 | 8 | thing is going to be they don't want to try it in Waco.  And so, |
| 09:11:34 | 9 | then, you've got that delay.  I understand the delay.  And I'm |
| 09:11:40 | 10 | sympathetic from the standpoint that I'm very sensitive about |
| 09:11:44 | 11 | moving my cases and getting them out because, you know, we |
| 09:11:52 | 12 | dispose of between 400 and 500 cases every year, and we have more |
| 09:11:59 | 13 | filed every year.  We've had more cases filed every year since I |
| 09:12:03 | 14 | came here in 1991. |
| 09:12:05 | 15 | MR. TITTLE:  Your Honor. |
| 09:12:06 | 16 | THE COURT:  And I had 890 of them when I came here, and |
| 09:12:12 | 17 | that's the problem I have to wrestle with. |
| 09:12:14 | 18 | So your idea is to just go full blow ahead, determine |
| 09:12:19 | 19 | the venue.  And it's easy for me.  I can send it to Waco, and I |
| 09:12:22 | 20 | don't have to worry about it. |
| 09:12:24 | 21 | MR. TITTLE:  We certainly hope that that's not the |
| 09:12:26 | 22 | case. |
| 09:12:26 | 23 | THE COURT:  Well, I understand that.  But if it's |
| 09:12:29 | 24 | there, it's more manageable because of the other.  I'm not saying |
| 09:12:34 | 25 | that I'll do it because there's equity on both sides and, of |

09:12:39   1   course, they're filed here to get out of Waco.  Although you do

09:12:42   2   have some residents that have the right to have it here.  But,

09:12:50   3   you know, you're going to get the discovery, you're going to get

09:12:52   4   the depositions and all of that.  But if you read the opinions, I

09:12:57   5   say, so what.  It's 100 miles from here.

09:13:01   6              MR. TITTLE:  Your Honor, the last thing, there are

09:13:02   7   statute of lim -- there's a two-year statute of limitations.

09:13:05   8   We're already into the second year.

09:13:07   9              THE COURT:  They're going to have to do something

09:13:08   10  pretty quick or they're going to have to start dismissing cases.

09:13:11   11             MR. TITTLE:  Well, you have more confidence than what's

09:13:13   12  going to occur in Waco than I think anyone else thinks that their

09:13:17   13  system is going to work.

09:13:17   14             THE COURT:  I just know what can happen and I know --

09:13:20   15             MR. TITTLE:  I've seen --

09:13:21   16             THE COURT:  -- how these cases can get into the federal

09:13:22   17  court.

09:13:23   18             MR. TITTLE:  Okay.  I've seen no judge who's had an

09:13:26   19  opportunity in Waco, despite evidence from the witness stand,

09:13:29   20  that the witness knows of no evidence of a crime.  I've seen

09:13:32   21  judges hold probable cause in multiple cases.  There has been no

09:13:36   22  indication that a -- that the judiciary in Waco is going to move

09:13:42   23  this along.  We are looking for a forum where we can get some

09:13:46   24  justice.  And yes, you're right, that's why we're in Austin.

09:13:50   25             But I think the statute of limitations is a serious

09:13:52  1  issue.  If we can't be allowed to move forward, there's no chance

09:13:56  2  they're going to be finished inside of two years.  In fact, we

09:13:59  3  think it's a delib -- and I point to them, but I mean their

09:14:02  4  clients.  We think it's a very deliberate process to get to the

09:14:05  5  two-year mark that they're taking on this.  They have not set one

09:14:10  6  single trial setting, and it's been more than a year.

09:14:14  7          So with all of those considerations, we'd like to move

09:14:19  8  forward.

09:14:20  9          MR. OLSON:  Judge, if I may very briefly.  I don't want

09:14:22  10  to belabor the point.

09:14:23  11          If the two-year statute of limitations we're talking

09:14:26  12  about is the filing of the civil suits, the civil suits can be

09:14:29  13  filed and then, they should be stayed.

09:14:29  14          THE COURT:  Well, there's no --

09:14:31  15          MR. OLSON:  So there's no prohibition to filing a civil

09:14:33  16  suit, but it just would be -- it would be stayed.

09:14:35  17          We've got a little bit of apples and oranges going on.

09:14:38  18  The Court has called us for a hearing on certain causes, and

09:14:41  19  there's some other cases that have been filed.  There haven't

09:14:45  20  been appearances yet, and so forth.  We're kind of talking about

09:14:47  21  both of them.  The ones that have been filed have been indicted.

09:14:50  22  From the face of the complaint, it says they've been indicted.

09:14:54  23          And the case law that we've cited and the Court is

09:14:58  24  certainly familiar with says, you know, the Court should stay it

09:15:00  25  because we don't want to have collateral attack on a criminal

09:15:03  1  proceeding or something that might turn into a collateral attack

09:15:06  2  on a 1983 or a criminal proceeding.  So, you know, the Court --

09:15:10  3  we believe the Court should stay that.

09:15:12  4       In terms of being in Waco, I've gotta tell ya, I think

09:15:16  5  Waco's a fine place to try a case in federal court, or state

09:15:19  6  court, or anywhere else.  Of course, the Waco Division is much

09:15:22  7  bigger than just Waco and --

09:15:25  8       THE COURT:  Thank you for sharing.

09:15:26  9       MR. OLSON:  Well, no.  That's the point is it's not

09:15:29  10  just about Waco.  It is big.  I realize the Court understands

09:15:33  11  that.

09:15:34  12       But we will respond to whatever it is that we need to

09:15:38  13  respond to, but we just think from the stay issue, we think the

09:15:42  14  law on the cases have been called hear today certainly -- all of

09:15:45  15  them, the law is very clear that a 1983 action were not meant to

09:15:52  16  preempt criminal cases and could put a lot of things in an odd

09:15:58  17  setting if that were allowed.

09:15:59  18       And, in fact, 1983 actions, based on the authority that

09:16:02  19  we've cited to the Court, should not even be entertained if any

09:16:06  20  of the issues that could be dealt with in those might have an

09:16:09  21  impact on the criminal case.  So, for example --

09:16:13  22       THE COURT:  Your job is to give me a letter opinion in

09:16:17  23  response to that as to why I don't have the authority after

09:16:21  24  reasonable time to say, the heck with all of this, I'm trying my

09:16:27  25  cases.

| | | |
|---|---|---|
| 09:16:27 | 1 | MR. OLSON:  Okay.  All right.  So -- |
| 09:16:28 | 2 | THE COURT:  It's been a year and y'all don't even know |
| 09:16:33 | 3 | who is going to prosecute these cases, which is inexcusable. |
| 09:16:35 | 4 | MR. OLSON:  I represent the chief of police and a |
| 09:16:37 | 5 | police officer, so I -- |
| 09:16:38 | 6 | THE COURT:  When I say you, generally -- |
| 09:16:40 | 7 | MR. OLSON:  Sure. |
| 09:16:40 | 8 | THE COURT:  -- I'm just talking to the three of you. |
| 09:16:42 | 9 | MR. OLSON:  Sure.  The three of us, yes, sir. |
| 09:16:44 | 10 | THE COURT:  And you're representing police officers. |
| 09:16:46 | 11 | MR. OLSON:  Sure.  And we'll be happy to brief -- I |
| 09:16:49 | 12 | mean, I think the answer's going to be the Fifth Circuit has said |
| 09:16:52 | 13 | if there's a pending criminal case, it should be stayed.  You |
| 09:16:57 | 14 | shouldn't have a 1983 action outrunning a criminal case so that |
| 09:17:00 | 15 | it can -- we can impact the criminal prosecution. |
| 09:17:04 | 16 | THE COURT:  Well, that's -- that authority is for |
| 09:17:10 | 17 | trial.  I see a lot of problems before you can get to a trial. |
| 09:17:13 | 18 | MR. OLSON:  Okay. |
| 09:17:15 | 19 | THE COURT:  So. |
| 09:17:16 | 20 | MR. OLSON:  All right, sir.  Thank you. |
| 09:17:18 | 21 | THE COURT:  Yeah.  Well, it's nice that y'all didn't |
| 09:17:22 | 22 | have to drive through the rain to get here.  But anything else |
| 09:17:25 | 23 | that you want to say?  Because I don't know what else I can do |
| 09:17:30 | 24 | until -- I know the plaintiff wants to start.  I guess he might |
| 09:17:41 | 25 | do like I did for ten years, and that is, try cases without any |

| | | |
|---|---|---|
| 09:17:46 | 1 | discovery. |
| 09:17:48 | 2 | You couldn't take discovery in the '60s.  You can take |
| 09:17:52 | 3 | the plaintiff and the defendant's deposition.  Couldn't even get |
| 09:17:55 | 4 | a doctor without a court order, but nobody needed it.  And you |
| 09:17:59 | 5 | didn't have any idea who the witnesses would be until they called |
| 09:18:02 | 6 | them, which is, by the way, a great way to try lawsuits. |
| 09:18:08 | 7 | I was, unfortunately, the chairman of the Supreme Court |
| 09:18:10 | 8 | advisory committee that let -- we thought full disclosure and the |
| 09:18:16 | 9 | identity of witnesses and all of that would be better |
| 09:18:23 | 10 | administration of justice.  I'm not so sure it is when |
| 09:18:33 | 11 | considering the discovery motions you see nowadays, not in my |
| 09:18:37 | 12 | court, by the way. |
| 09:18:38 | 13 | MR. BRANDT:  Your Honor, if I may, we'll be very |
| 09:18:40 | 14 | closely monitoring the hearing that's going to be held in June, |
| 09:18:45 | 15 | the June 13th hearing, and then, I'll be happy to update this |
| 09:18:49 | 16 | court on the results of that. |
| 09:18:52 | 17 | THE COURT:  Please. |
| 09:18:53 | 18 | MR. BRANDT:  Because that is certainly something you're |
| 09:18:55 | 19 | concerned about, so we'll let you know what happens.  Because |
| 09:18:57 | 20 | there is only one criminal defendant who is moving for the |
| 09:19:02 | 21 | disqualification of Mr. Reyna, but the way that decision occurs |
| 09:19:10 | 22 | will affect all the rest of the cases.  So I'll let you know how |
| 09:19:13 | 23 | that occurs. |
| 09:19:14 | 24 | THE COURT:  What is the situation with the criminal |
| 09:19:16 | 25 | cases?  They are indicted, they've been arrested.  Are they all |

09:19:22  1   on bond?  Are none on bond?  Or --

09:19:26  2        MR. BRANDT:  I believe that they have worked out --

09:19:28  3   originally there was a bond set across the board for everybody,

09:19:31  4   the same amount, but then, they're worked out.  So I think they

09:19:34  5   eventually got everyone released on bond.  But it took a while to

09:19:40  6   get through all the numbers.

09:19:43  7        But then, we have -- and I don't know the numbers, but

09:19:45  8   we have, I think, 150-something that have been indicted.  And

09:19:49  9   there is a group that has not yet been presented to the grand

09:19:52  10  jury.  But of all the ones that were presented to the grand jury,

09:19:55  11  all of whom were indicted.  So to the extent so far.

09:20:00  12        THE COURT:  Makes one wonder why they indicted 150

09:20:07  13  people.  I don't need a comment on that.  It's just so far from

09:20:16  14  all of the experiences I've had, it's just staggering to think of

09:20:22  15  the problems.

09:20:23  16        MR. BRANDT:  I think --

09:20:24  17        THE COURT:  Even if you try them one after another,

09:20:26  18  after another, after another, you're going to be defending

09:20:29  19  shortly constitutional cases and I just -- I would prayerfully

09:20:42  20  hope the state courts handle it, but I rather suspect we're going

09:20:46  21  to get in it at some point in time.

09:20:49  22        MR. BRANDT:  Thank you.

09:20:49  23        THE COURT:  Anything else?

09:20:50  24        MR. BRANDT:  No, your Honor.

09:20:51  25        THE COURT:  Thanks.

09:20:52  1          MR. TITTLE:  Your Honor, just the last thing.

09:20:53  2          And, of course, I'm going to include in the letter

09:20:55  3  brief the -- any case law regarding these unindicted as to how --

09:20:59  4  whether they are, in fact, part of the criminal cases and how

09:21:03  5  long they're going --

09:21:04  6          THE COURT:  But understand, counsel, I'm not worried

09:21:06  7  about the indicted or the unindicted.

09:21:11  8          MR. TITTLE:  Okay.

09:21:12  9          THE COURT:  As far as I'm concerned, every person that

09:21:13  10  you represent has a free right to file a lawsuit and to go to

09:21:17  11  trial.  The problem is, how do you go to trial?  How do you get

09:21:22  12  your discovery when they say the criminal case is there?  And the

09:21:26  13  Fifth Circuit is pretty strong, you want to look at that, that

09:21:29  14  says:  Sparks, you screw up all the time, but you can't screw up

09:21:35  15  this way.  You can't try a civil case when there's a criminal

09:21:39  16  trial pending.

09:21:44  17          MR. TITTLE:  All right.  Last thing.

09:21:46  18          On the statute of limitations, just to address what Mr.

09:21:47  19  Olson said, it is true that plaintiff could file a suit at the

09:21:51  20  end of the two year -- before the two years is up; however, they

09:21:55  21  would have been denied an opportunity to find out who are the

09:21:59  22  responsible parties.  This is a scenario in which the potential

09:22:03  23  liability to McLennan County and city of Waco is astronomical

09:22:08  24  with these number of plaintiffs.  We have sued these people

09:22:11  25  individually.

| | | |
|---|---|---|
| 09:22:12 | 1 | THE COURT:  Well, you may.  You're telling me you could |
| 09:22:15 | 2 | get all the information because there's no confidentiality |
| 09:22:19 | 3 | agreement or -- and in that way, you could learn some things.  On |
| 09:22:30 | 4 | the other hand, you know who the most litigious people are in the |
| 09:22:35 | 5 | federal courts now, particularly in Austin? |
| 09:22:38 | 6 | MR. TITTLE:  I'm sorry, mostly what? |
| 09:22:41 | 7 | THE COURT:  Litigious.  People who litigate.  John |
| 09:22:45 | 8 | Does.  I don't get any cases anymore in the civil rights area, |
| 09:22:49 | 9 | particularly on excessive force, where I don't have John Does, |
| 09:22:55 | 10 | and they fill those in when they finally can get discovery.  And |
| 09:22:59 | 11 | it eliminates the statute of limitations problem you're talking |
| 09:23:02 | 12 | about. |
| 09:23:03 | 13 | MR. TITTLE:  I might respectfully disagree on that only |
| 09:23:06 | 14 | because I've had -- I've been the plaintiff who pled John Does, |
| 09:23:10 | 15 | and there's a Fifth Circuit case that indicates that it does not |
| 09:23:14 | 16 | preserve the statute for someone who was not mentioned prior to |
| 09:23:17 | 17 | the expiration of the two years.  I could -- I'll include that |
| 09:23:20 | 18 | case law in my letter brief.  I know that was raised against me, |
| 09:23:24 | 19 | and I remember the case law was not in my favor.  So I even put a |
| 09:23:28 | 20 | John Doe in here. |
| 09:23:29 | 21 | THE COURT:  Yeah, I know. |
| 09:23:30 | 22 | MR. TITTLE:  As you noticed. |
| 09:23:32 | 23 | But I think we have to name the individual defendants |
| 09:23:34 | 24 | before the two years or it's gone forever; and if that's correct, |
| 09:23:39 | 25 | to not allow discovery for a reasonable period prior to that |

09:23:43   1   would essentially limit many of these people to sort of taking a

09:23:48   2   guess as to who they think's responsible before we really look

09:23:51   3   under the hood.  And given the exposure, that we'd like more

09:23:57   4   defendants.

09:23:58   5        THE COURT:  You -- how many police officers are in

09:24:03   6   McLennan County?

09:24:04   7        MR. TITTLE:  Well, there's a lot, but the majority of

09:24:06   8   the police officers who were just crowd control or picking up --

09:24:09   9   you know, they weren't involved in the issues that are anywhere

09:24:12  10   related to this.

09:24:13  11        THE COURT:  So you notice somebody for a deposition and

09:24:18  12   their lawyer's telling them to take the Fifth, how are you going

09:24:21  13   to find out anything there?

09:24:22  14        MR. TITTLE:  I don't think the police officers are

09:24:24  15   going to take the Fifth.  I don't know how they would, but if

09:24:26  16   they did, I guess we could deal with that.

09:24:28  17        THE COURT:  You've sued them.

09:24:29  18        MR. TITTLE:  Well, I haven't sued them criminally.

09:24:31  19        THE COURT:  No, no, no.  I mean, but they're out there.

09:24:34  20        MR. TITTLE:  Well, your Honor --

09:24:36  21        THE COURT:  It's just a problem.

09:24:38  22        MR. TITTLE:  It is.

09:24:38  23        THE COURT:  If the police officer's told not to testify

09:24:42  24   as to bearing on a criminal case, then you're going to go in

09:24:44  25   there -- and, I don't know, make the state courts operate

| | | |
|---|---|---|
| 09:24:47 | 1 | differently from the federal courts, but I don't have much |
| 09:24:52 | 2 | authority to interfere with the criminal investigation. |
| 09:24:55 | 3 | MR. TITTLE:  I don't know of any equivalent -- |
| 09:24:59 | 4 | something along the lines of a Fifth Amendment right that the |
| 09:25:02 | 5 | police officers are going to have, unless he actually was |
| 09:25:04 | 6 | criminally -- has some culpability.  So I don't think he can |
| 09:25:07 | 7 | refuse to answer unless the court has given that privilege.  But |
| 09:25:12 | 8 | I'll research that. |
| 09:25:13 | 9 | But as the Court knows on municipal liability and, you |
| 09:25:17 | 10 | know, all that, that Monell stuff, we can file our pleading the |
| 09:25:22 | 11 | day before the two year runs and add the McLennan County and the |
| 09:25:25 | 12 | city of Waco, and within a day or two, we're going to get these |
| 09:25:29 | 13 | motions to dismiss that we haven't pled sufficient facts, Iqbal, |
| 09:25:34 | 14 | Twombly, all that stuff, despite the plain language of Rule 4. |
| 09:25:38 | 15 | But I will save my soapbox there. |
| 09:25:41 | 16 | But the reality is, unless we have the opportunity to |
| 09:25:45 | 17 | conduct discovery, we could not plead a Monell case.  A Monell |
| 09:25:50 | 18 | case has not yet been pled in this case because it would end up |
| 09:25:53 | 19 | getting the normal motion to dismiss, and my guess is we wouldn't |
| 09:25:56 | 20 | be able to -- |
| 09:25:57 | 21 | THE COURT:  Well, lawyers never do enough homework to |
| 09:26:01 | 22 | put in a policy or the policy is a lack of policy in the |
| 09:26:06 | 23 | pleadings so that they can stand up with regard to what the |
| 09:26:13 | 24 | Supreme Court says is law in municipalities. |
| 09:26:16 | 25 | MR. TITTLE:  I do this kind of work and I plead those |

09:26:18  1  cases, and I know how to plead a Monell case.  And I am no --

09:26:25  2  this area of the law affects our side because it's the catch-22

09:26:29  3  of being able to know what to plead if you can't do some

09:26:31  4  discovery, but you've gotta plead it before you can get to it,

09:26:35  5  you know.  But anyway, in this case, there is no way that our

09:26:38  6  Monell claims would survive the challenges unless we're allowed

09:26:45  7  to do some discovery.

09:26:46  8          Right now, we would just be speculating as to what the

09:26:48  9  policy is.  And granted, we can do our homework and give it a

09:26:51  10  heck of a try, but I think that is a -- yet, another reason, at

09:26:58  11  some point soon, to allow these cases to go forward.

09:27:02  12          THE COURT:  All right.

09:27:03  13          MR. TITTLE:  Thank you, your Honor.

09:27:07  14          THE COURT:  Okay.  Y'all know the problem.  Copy each

09:27:15  15  other with the letters you're going to write, and if you have any

09:27:24  16  solution, let me know.  Just thinking out of the box here, might

09:27:39  17  see if you can find any authority if you sue the municipality,

09:27:46  18  that you can't take discovery to establish if they have a policy

09:27:54  19  and if not, what are their policies.  Actually, most cities now

09:28:10  20  have policies, and all they have to do is respond in the

09:28:22  21  discovery what their policy is for event A, and then, you can go

09:28:32  22  from there.  Far more dangerous when they don't respond.

09:28:40  23          MR. TITTLE:  This issue is one I deal with so

09:28:43  24  frequently, even the deposition to perpetuate -- and I don't know

09:28:48  25  the federal rule, but even that notion, deposition to perpetuate

09:28:52  1    prior to filing suit, there's a Fifth Circuit case law on that

09:28:54  2    that would suggest that that's not allowed in this kind of case.

09:28:58  3            So, you know, this issue of how do we find out the

09:29:01  4    facts so that we can plead it is -- in effect, they've put up a

09:29:07  5    theoretical --

09:29:08  6            THE COURT:  Well, you're talking about different

09:29:10  7    things.  You're talking about conduct on one, and you're talking

09:29:12  8    about policy or lack of policy on the other.  That's what the

09:29:18  9    Supreme Court divided the liability up between employer and the

09:29:24  10   employee.  And you're right, it's going to be a discoverable

09:29:37  11   problem, and you're going to need to discover it because the next

09:29:40  12   layer you're going to have is qualified immunity, and that's when

09:29:46  13   the policy will come up.

09:29:48  14           So you might look into that and see if you can get

09:30:00  15   that.  And then, of course, the other problem in those cases is

09:30:05  16   once you name the city in the state law, for whatever reason, you

09:30:08  17   exempt the defendants.  But these are federal causes of action.

09:30:15  18           Well, counsel, I didn't expect any answers, but I just

09:30:18  19   wanted you to know where the Court is.

09:30:21  20           MR. TITTLE:  As a procedural matter, your Honor,

09:30:23  21   there's a couple -- there's several unopposed motions for leave

09:30:26  22   to amend complaints that are outstanding that you had put on

09:30:32  23   hold, I guess, till we had this hearing, and I would just bring

09:30:34  24   those to the attention of the Court.

09:30:37  25           THE COURT:  Well, all I have now is motions to transfer

09:30:40  1   and motions to dismiss.  So you have a matter of right to amend

09:30:43  2   at least once.

09:30:45  3          MR. TITTLE:  I'm just bringing to the attention of the

09:30:47  4   Court that the unopposed motions have been filed with the

09:30:51  5   attached amendment.  Just the Court -- I guess everything was put

09:30:54  6   on hold until this.  So I'm just putting -- bringing it to your

09:30:59  7   attention that those are out there that remain.

09:31:01  8          THE COURT:  Tell me again what you're -- a motion to

09:31:03  9   file an amended complaint?

09:31:05  10          MR. TITTLE:  Those have been filed with the Court.

09:31:06  11   They just haven't been ruled on and I took it that they were --

09:31:11  12          THE COURT:  Nobody's filed an answer in this case.  So

09:31:16  13   as a matter of fact, you have the right to file an amended

09:31:17  14   complaint.

09:31:18  15          MR. TITTLE:  I agree.  They filed the motions to

09:31:21  16   dismiss that we've talked about.  And then, the plaintiffs have

09:31:26  17   then amended the complaint to deal with many of those issues, and

09:31:29  18   they did not oppose the amendment.  And so, I --

09:31:32  19          THE COURT:  Doesn't make any difference if they oppose

09:31:34  20   or not.  You have that right.

09:31:35  21          MR. TITTLE:  I'm just saying that the Court hasn't

09:31:37  22   ruled on it yet and I was just pointing that to -- there's about

09:31:40  23   six or seven of them out there.  Thank you.

09:31:42  24          THE COURT:  Brittany, check, and if there's some first

09:31:44  25   amended complaint, allow all of them to be filed, notwithstanding

09:31:50   1   the rules giving that authority.

09:31:53   2                All right.  I'm in recess.

09:31:55   3                MR. OLSON:  Thank you, your Honor.

           4                (End of proceedings.)

           5

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                              * * * * * *

2

3

4     UNITED STATES DISTRICT COURT)

5     WESTERN DISTRICT OF TEXAS    )

6

7        I, LILY I. REZNIK, Official Court Reporter, United States

8     District Court, Western District of Texas, do certify that the

9     foregoing is a correct transcript from the record of proceedings

10    in the above-entitled matter.

11       I certify that the transcript fees and format comply with

12    those prescribed by the Court and Judicial Conference of the

13    United States.

14       WITNESS MY OFFICIAL HAND this the 14th day of June, 2016.

15

16

17                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
18                              Official Court Reporter
                                United States District Court
19                              Austin Division
                                501 W. 5th Street, Suite 4153
20                              Austin, Texas 78701
                                (512)391-8792
21                              Certification No. 4481
                                Expires:  12-31-16
22

23

24

25