IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT CLINTON BUCY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| BRENT STROMAN, MANUEL | § | NO. 1:15-cv-1040-SS |
| CHAVEZ, ABELINO "ABEL" | § | |
| REYNA and JOHN DOE | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT REYNA'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW, Robert Clinton Bucy, Plaintiff in the above-entitled and numbered cause, and files this his Response to Defendant Reyna's Motion to Dismiss (Doc. 29) and would respectfully show the Court as follows:

## I.      PROCEDURAL AND FACTUAL BACKGROUND

This is a civil rights lawsuit brought by Plaintiff pursuant to 42 U.S.C. § 1983 alleging false arrest and unlawful detention by Defendants Stroman, Chavez, Reyna, and Doe on or about May 17, 2015. Plaintiff sues Defendants in their individual capacities. Plaintiff alleges Fourth Amendment violations or, in the alternative, Fourteenth Amendment violations by Defendants. Plaintiff also alleges that Defendants conspired to violate his constitutional rights to be free from unlawful seizure.

Defendant Abelino Reyna, the McLennan County District Attorney, has filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE. (Doc. 29)  In essence, Defendant Reyna, like Defendants Chavez and Stroman in their nearly identical 12(b)(6) motion, asserts that Plaintiff's First Amended Complaint merely states conclusory,

speculative allegations that cannot overcome his entitlement to qualified immunity.[1] Further, Defendant asserts that Plaintiff's indictment by a grand jury washes his hands clean of any alleged false arrest by him, thus Plaintiff's claims against them should be dismissed. (Doc. 29 at pp. 7-10)

Plaintiff has clearly and specifically pleaded facts to support each element of his causes of action so that dismissal is improper.  Plaintiff has satisfied the *Twombly* standard of pleading factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the conduct alleged.

## II.    APPLICABLE LEGAL STANDARDS

When ruling on a defendant's motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint, and construe all factual allegations in the light most favorable to the plaintiffs.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The question at the motion to dismiss stage is whether, "with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief."  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 640 (3d ed. 2004).  To survive a motion to dismiss under Rule 12(b)(6), a complaint need only present sufficient factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

---

[1] Defendant Reyna's Motion to Dismiss is essentially the same motion as that filed by Defendants Stroman and Chavez, except for his claim to prosecutorial immunity as discussed below.

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

A claim is facially plausible when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Additionally, if "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *see also Buesing v. Honeycutt*, 1:16-cv-286-SS (W.D. Tex. April 25, 2016).

## III.  ARGUMENTS AND AUTHORITIES

Defendant Reyna contends that, despite the aforementioned legal standard, and despite Plaintiff's 30+ pages of specificity that would rival any complaint ever filed in a § 1983 case, Plaintiff has failed to state a claim and that his case should be dismissed even prior to discovery. Along those lines, Defendant Reyna contends the following:

(i)     that Plaintiff's Fourth Amendment Claims are barred because a grand jury indicted Plaintiff;

(ii)    that presentation of the case to the Grand Jury entitles Reyna to absolute immunity;

(iii)    that even if the indictment did not break the chain of causation, Plaintiff's allegations fail to state a claim that would overcome qualified immunity;

      (a)    that the law was not established that the concept of particularized probable cause would apply in this case;

      (b)    that Plaintiff's *Franks* allegation is conclusory because the Complaint does not allege with specificity how Defendants knew that Plaintiff was not in a criminal street gang;

      (c)    that Plaintiff's allegations that video evidence directly contradicts Defendants' basis for probable cause is "purely opinion."

(iv)    that Plaintiff has not alleged any facts that could give rise to a Fourteenth Amendment claim;[2]

(v)    that Plaintiff has failed to allege specific facts that could plausibly state a conspiracy claim.

Without regurgitating the entire Compliant, it is hard to imagine that more specificity could have been included. In painstaking detail, the Complaint includes answers to the who, what, when, where, and how Plaintiff was falsely arrested. Defendant's contention that Plaintiff's Complaint is conclusory and lacking in specificity is completely without merit.

Plaintiff alleges that he was engaged in lawful conduct at a lawful motorcycle rally when violence occurred that he had no knowledge of and did not participate in any manner. Plaintiff asserts that he was arrested merely on the basis of his presence at the location where the incident occurred. Plaintiff further asserts that video evidence directly contradicts Defendants' theory that he was either involved in the violent incident or encouraged others' participation. In fact, the video evidence demonstrates that Plaintiff and many others acted in a manner inconsistent with Defendants' theory of the case. Despite a complete lack of evidence linking Plaintiff to any criminal conduct, Defendants caused Plaintiff to be arrested and charged with the first degree felony of Engaging in Organized Crime with Intent to Commit Murder. Defendant Reyna was

---

[2] Plaintiff asserts a Fourteenth Amendment violation "**in the alternative,**" and only if a Fourth Amendment claim is not sustainable. (*See* P.'s 1st Am. Compl. ¶ 103)

not acting as an advocate/prosecutor in assisting with the mere preparation of the affidavit for an arrest warrant, but rather involved himself in the investigative phase of the case **prior to a determination of probable** cause, and thus, is not entitled to absolute prosecutorial immunity. Defendant Reyna involved himself in the decision to arrest when he called the meeting described above and changed the course of earlier decisions to release most of those detained, including Plaintiff. Plaintiff further alleged that the fill-in-the blank affidavit that was used as the basis for probable cause is completely lacking in particularized facts specific to Plaintiff, and thus runs afoul of the actual language of the Fourth Amendment, and case law dating back more than one hundred years.

1.    **Evidence Presented to Grand Jury Was Tainted and Therefore an Indictment Does Not Break the Causal Chain**

Defendant makes the argument that Plaintiff is unable to state a claim since a grand jury indicted Plaintiff.   The "independent intermediary" doctrine states:

> If facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.  **However, the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.  The chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary.**

*Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010) (internal quotations and citations omitted) (emphasis added).  "Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior."  *Hand v. Gary*, 383 F.2d 1420, 1427-28 (5th Cir. 1988).

Defendant's argument would require Plaintiff, in the pleading stage of a case, to have access to information that by law is secret.  It goes without saying that Plaintiff cannot state with

certainty exactly what was said in the secret grand jury proceedings, and the fact that District Attorney Abel Reyna chose not to stenographically record the proceedings means that no transcript will ever exist.[3]  Defendants' argument would effectively create an absolute bar to any case alleging Fourth Amendment violations if a grand jury issues an indictment.

In a recent case before United States Magistrate Judge Andrew Austin (Lee Yeakel, District Judge), a defendant raised this very issue in his 12(b)(6) motion to dismiss.  *Muniz v. Davis, et* al, A-13-cv-666-LY (W.D. Tex. Aug. 27, 2014).  The plaintiff in that case contended that the facts submitted to the "independent intermediary" (in that case a magistrate) were false, misrepresented, or incomplete.  *Id.* at p. 15.  In denying the defendant's 12(b)(6) motion, Judge Austin observed (and Judge Yeakel adopted) "at this stage in the litigation and based on the current record, the Court cannot determine that 'all the facts' were presented to the magistrate, as it is not even clear at this point what 'all the facts' are."  *Id.*

In the current case, Plaintiff has alleged numerous facts (see pp. 16-21 of First Amended Complaint) from which the Court could infer that the information presented to the grand jury was false, misrepresented, or incomplete.  Among them, that Defendant Chavez testified before the grand jury and that it can reasonably be inferred that he testified to the same false and materially misleading statements he swore to in the 177 affidavits of arrest and in various examining trials; that Plaintiff was a member of a criminal street gang when, in fact, he was not, nor has he ever been a member of a criminal street gang.  In fact, there is no other plausible explanation for how the grand jury could have indicted Plaintiff on a charge of Engaging in Organized Crime with Intent to Commit Murder, premised on Plaintiff being a member of a

---

[3] District Attorney Reyna, himself a Defendant in this case, made the decision to conduct grand jury proceedings that were not stenographically recorded, yet argues in his motion to dismiss that Plaintiff is unable to prove that the grand jury proceedings were tainted.

criminal street gang, unless that false information was provided to them.  It is consistent with Chavez's previous false testimony, and consistent with the false narrative perpetuated by Chief Stroman and District Attorney Reyna.

Most significantly, unambiguous video evidence was not shown that would have conclusively proven Plaintiff's lack of participation in any of the violence.[4]  As Plaintiff alleged, the grand jury began and ended deliberations during one day and could not conceivably have reviewed a complete picture of the evidence that exists.[5]  The notion that the grand jury had even a fair sampling of the evidence needed to conduct an "independent" review such that it would break the causal chain is preposterous.

It is important to note that cases addressing this  issue involve summary judgment determinations rather than 12(b)(6) motions. In these cases, courts invariably granted summary judgment due to the plaintiffs' failure to provide <u>any</u> evidence of taint.  In all of these cases, the defendants prevailed because the plaintiff did not provide, <u>or even allege</u>, any evidence of taint whatsoever. In *Buehler v. City of Austin*, the plaintiff could not survive summary judgment because he did not provide any "direct or actual evidence that the grand jury's deliberations were tainted by any of the defendants." A-13-CV-1100-ML at p. 8 (W.D. Tex. Feb. 20, 2015). In *Cuadra v. Houston Indep. Sch. Dist.*, the plaintiff could not survive summary judgment because his "mere allegations of 'taint,' without more, are insufficient to overcome summary judgment." 626 F.3d 808, 813 (5th Cir. 2010). In *Shields v. Twiss*, the plaintiff could not survive summary judgment because "he ha[d] put forward no evidence whatsoever that exculpatory information

---

[4] Not only was video evidence that would have clearly shown an absence of probable cause to indict Plaintiff available, that same video evidence was being used by law enforcement immediately after the incident to determine whether to return motorcycles and vehicles that were initially seized by law enforcement.  (P.'s 1st Am. Compl. ¶ 66)

[5] More than 13 months after the incident, the DA still claims he is still unable to set a single case for trial due to the volume of evidence his office is reviewing.

was withheld from the grand jury…" 389 F.3d 142, 150 (5th Cir. 2004). In *Craig v. DART*, the plaintiff could not survive summary judgment because the plaintiff had "not affirmatively shown, <u>or attempted to show</u>, what evidence the grand jury relied upon to return an indictment." 504 Fed. Appx. 328, 332 (5th Cir. 2012) (emphasis added).

Plaintiff has alleged with great specificity, that Defendants tainted the grand jury. When considering the facts as alleged by Plaintiff as true, this Court can plausibly draw the reasonable inference that the grand jury was misdirected either by omission or commission.

**2.     Reyna is Not Entitled to Absolute Immunity**

Defendant Reyna contends that he is entitled to absolute immunity because a prosecutor is generally immune from § 1983 liability for initiating a prosecution and in presenting the State's case.  It appears from Defendant's motion that Reyna's argument, in this regard, is premised on the fact that he was involved in the presentment of Plaintiff's case to the Grand Jury. (Doc. 29 at pp. 9-10) In other words, Defendant Reyna does not suggest in his motion that a prosecutor who involves himself in the investigative phase of the case prior to a determination of probable cause would be entitled to prosecutorial immunity. Instead, Defendant Reyna argues that, regardless of his prior actions, his presentment of Plaintiff's case to the Grand Jury effectively washes him clean of any prior violations of Plaintiff's constitutional rights. (Doc. 29 pp. 9-10)  This cannot be the law.

The United States Supreme Court and the Fifth Circuit have long held that a prosecutor is not entitled to prosecutorial immunity for acts taken prior to the judicial phase.[6] Acts by a prosecutor during the investigative stage of a case, *before* the establishment of probable cause,

---

[6] Plaintiff's First Amended Complaint is replete with allegations that Defendant Reyna involved himself in the investigative phase of the case prior to a determination of probable cause (Doc. 27 at ¶¶ 23, 29-30, 43-44, 113)

entitles a prosecutor the same immunity as a police officer – *i.e.* qualified immunity. A prosecutor who involves himself in the investigative phase of the cause **prior to a determination of probable cause** is not entitled to absolute, prosecutorial immunity. *Kalina v. Fletcher,* 522 U.S. 118 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (*Buckley* III); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Loupe v. O'Bannon*, No. 15-30535 (5th Cir. May 27, 2016); *Hoog-Watson v. Guadalupe County*, 591 F.3d 431 (5th Cir. 2009); *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003).

Reyna's argument would have the practical effect of rendering this line of cases meaningless, since a prosecutor who has acted outside his role as an advocate could always undo his potential liability by inserting himself into any stage of the judicial process, thereby cloaking himself in absolute immunity despite his earlier wrongs. This prosecutorial "laundering" would allow his misconduct to go in dirty, but come out clean. Common sense dictates a different result.

While no court appears to have directly addressed this precise issue, several have addressed analogous situations, and rejected arguments similar to that made by Reyna. In *Buckley v. Fitzimmons*, 509 U.S. 259 (1992) when considering prosecutorial immunity, the Supreme Court stated:

> "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for the possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they are here, the immunity that protects them is also the same." *Buckley*, at 276.

In *Thomas v. Sams*, 734 F.2d 185 (5th Cir. 1984), the court rejected a similar argument in which a mayor-turned-magistrate attempted to invoke judicial immunity based on the

"independent decisions" he made in his capacity as a magistrate judge to protect against § 1983 liability based on his conduct as mayor. The court noted:

> "Sams did not choose to present the complaint to an impartial intermediary. He deliberately avoided doing so, despite the availability of state judges and justices of the peace who had authority to sign the warrant. Under these circumstances the issuance of the arrest warrant was not an intervening cause: There was no 'independent decision' to break the causal chain and to insulate him as the initiating party. Sams acted with 'personal animosity, malice, and a lack of good faith' in undertaking the acts that enabled him to take up his magistrate's pen and sign the warrant. **He may not inoculate his conduct by that pen-stroke.**" *Sams*, 734 F.2d at 191 (emphasis added).

In the present case, Defendant Reyna took on the role of the police prior to the determination of probable cause, and now attempts to shield his investigative work with the aegis of absolute immunity merely because he was in involved in the presentation of Plaintiff's case to the grand jury. It can hardly be denied that Reyna has every incentive to produce indictments given his direct responsibility for Plaintiff's false arrest, and the many others whose constitutional rights were grossly violated as a direct result of Reyna injecting himself into the investigative phase of the case.[7] The United State Supreme Court has held that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Allowing Reyna to escape § 1983 liability simply by donning his prosecutor hat subsequent to his earlier conduct would be a miscarriage of justice.

---

[7] Reyna's career and financial well-being are in jeopardy because of his flagrant disregard of well-settled law. Simply put, for every case in which he can obtain a conviction, he reduces his personal financial exposure for the false arrests he initiated.

3.     **Plaintiff Has Sufficiently Pleaded a *Malley v. Briggs* Claim, or in the Alternative, a *Franks* Violation**

Defendant next contends that even if the indictment did not break the chain of causation, Plaintiff's "conclusory and speculative allegations" fail to state a claim.   Plaintiff's First Amended Complaint alleges that the probable cause affidavit upon which the arrest is based is completely lacking in particularized facts that would support a finding of probable cause.   In ¶ 92 of his First Amended Complaint, Plaintiff invokes the doctrine set forth in *Malley v. Briggs*.   In short, that Plaintiff's Fourth Amendment rights were violated when an affidavit was presented to a magistrate judge that on its face was lacking in probable cause.   The affidavit, incorporated by reference in the Complaint, is devoid of particularized facts that would establish probable cause as to Plaintiff.

Despite the express language of the Fourth Amendment[8] and Supreme Court decisions that prohibit the use of open-ended or general warrants, Defendants contend that a particularized showing of facts is no longer required to establish probable cause.   A review of case law clearly demonstrates that Defendants' contention is incorrect.[9]

---

[8] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, **and no warrants shall issue, but upon probable cause**, supported by oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized." Fourth Amendment to United States Constitution (Emphasis added.)

[9] See *also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("...**the belief of guilt must be particularized with respect to the person to be searched or seized.**"); *Trapper v. North Carolina*, 451 U.S. 997, 1000 (1981); *Michigan v. Summers*, 452 U.S. 692, 695, n. 4 (1981); *U.S. v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008); *Williams v. Kaufman Co.,* 352 F.3d 994, 1003 (5th Cir. 2003) (quoting *Ybarra*, 444 U.S. at 91); *Merchant v. Bauer*, 677 F.3d 656, 666 (4th Cir. 2012) ("**The Supreme Court has emphasized that '[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.**'"); *Hawkins v. Mitchell, et al*, 983, 994 (7th Cir. 2014); *U.S. v. Ojeda-Ramos*, 455 F.3d 1178, 1181 (10th Cir. 2006) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Guzman*, SA-13-CR-89-DAE (W.D. Tex. 2013); *Dinler v. City of New York*, 2012 WL 4513352 *6 (S.D.N.Y 2012) ("**The Fourth Amendment does not recognize guilty by association.**").

---

Defendant mischaracterizes the nature of the incident at Twin Peaks by suggesting that all in attendance were members of the same "riotous" group and then analogizes to cases in which all members of a group are arrested. (Doc. 29 at pp. 2, 12) The cases cited by Defendant involve **entire groups of individuals that are observed violating the law**, thus giving law enforcement probable cause to arrest all of the individuals, even if specific unlawful acts cannot be ascribed to specifical individuals. *Carr v. District of Columbia,* 587 F.3d 401, 406 (D.C. Cir. 2009)*.* The "protest cases" cited by Defendant have not changed the Fourth Amendment's requirement of particularity. They are fact specific incidents in which the arrested person is part of a larger group, that collectively is in violation of the law.  *See Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012). That is hardly the case in the present situation where video evidence conclusively proves that the vast majority of those arrested were engaged in completely lawful behavior. While many of those arrested were motorcycle enthusiasts in attendance at a motorcycle rally, they were certainly not acting as a single entity such that the requirement of particularity was established by their presence in the group.

Defendant also relies on the Tenth Circuit opinion in *Callahan v. Unified Gov't of Wyandotte Cty,* 806 F.3d 1022 (10th Cir. 2015) for the premise that the law is no longer well settled after *Maryland v. Pringle*, 540 U.S. 366 (2003), as to what constitutes probable cause in multiple suspect, criminal enterprise cases. Despite the *Pringle* court reaffirming the longstanding requirement that "the belief of guilt must be particularized with respect to the person to be searched or seized," the Tenth Circuit finds ambiguity that no other court has found. In fact, the Fifth Circuit has repeatedly affirmed the well settled requirement of particularity. Citing to *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) and *Pringle*, the Fifth Circuit stated:

> "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).   "**Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person**." *Id*.   However, proximity is not irrelevant; reasonable inferences may be drawn from a person's connection to the criminal activity. *See Pringle*, 540 U.S. at 372, 124 S.Ct. 795; *United States v. Raborn*, 872 F.2d 589 (5th Cir.1989).

*U.S. v. Hearn,* 563 F.3d 95, 103 (5th Cir. 2009) (Emphasis added).  The *Ybarra* court further noted that "[t]his requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." 444 U.S. at 91.

In the present case, there is absolutely no evidence of a joint enterprise that existed for the purpose of committing criminal acts, and the probable cause affidavit fails to state with particularity any facts with respect to Plaintiff that he was engaged in such a joint enterprise. In fact, and as alleged by Plaintiff in his Complaint, the video evidence that exists directly contradicts any theory of joint enterprise as it shows Plaintiff and many others running away from the violence, not toward it.  The actions of Plaintiff as depicted on the video evidence runs counter to Defendants' fictional theory of joint enterprise.  Surely Defendants would have included in the probable cause affidavit some specific evidence regarding Plaintiff's role in the joint enterprise had any existed.  Defendants' contention that the situation at Twin Peaks on May 17, 2015 was so unique and complicated that the Fourth Amendment ceased to apply is unprecedented and without merit.  As has been required throughout the history of our country, law enforcement must have particularized facts before arresting an individual, and in this instance, the fill-in-the-blank probable cause affidavits do not meet that standard.  As noted above, the contours of this right had been well settled for many years by the time of this incident.

Accordingly, Plaintiff has pleaded facts that would overcome Defendant's claim of qualified immunity.

### Plaintiff has sufficiently pleaded a *Franks* violation. [10]

Defendant next contends that Plaintiff's *Franks* allegation is conclusory. Plaintiff alleges that the probable cause affidavit falsely states that Plaintiff "is a member of a criminal street gang" and that he regularly associates in the commission of criminal activities. Plaintiff states in his First Amended Complaint that these statements are categorically false. Defendant contends that Plaintiff's emphatic and unambiguous denial is somehow conclusory. Defendant contends that Plaintiff fails to establish the "falsity" of the information or how Defendant knew or should have known the information was false. In fact, Plaintiff anticipated these boilerplate "conclusory" objections and went to great lengths to assert specific facts relating to this issue. Plaintiff's First Amended Complaint states:

> 42.     The affidavit falsely states that Plaintiff is "a member of a criminal street gang." That statement is categorically *false*. It is an indisputable fact that Defendants did not possess any reliable particularized information to indicate that Plaintiff himself was a member of a criminal street gang on or before the date such fact was sworn to by Defendant Chavez. Plaintiff was not, and never has been, a member of a criminal street gang. During all relevant time periods, Plaintiff was not associated with any organization that meets any known definition of "criminal street gang." Plaintiff was not, and never has agreed to be in a gang of any type, much less a "criminal street gang." Plaintiff is a law abiding citizen who associates with other law abiding citizens and in no way, shape, or form is a member of a "criminal street gang." The motorcycle club with which Plaintiff was associated at the time of this incident was not included on any law enforcement lists as a "criminal street gang." Finally, no law enforcement list or database showed Plaintiff to be a "member of a criminal street gang" at the time of the incident or on the date on which Defendant Chavez swore to that fact for the purpose of establishing probable cause.

> 43.     Defendants Chavez, Stroman, and Reyna all knew the exact wording of the probable cause affidavit and knew at the time it was sworn to and presented to the

---

[10] Pled in the alternative to the *Malley v. Briggs* allegations, Plaintiff alleges that Defendants Stroman, Chavez, and Reyna knowingly and intentionally, or with reckless disregard for the truth, caused an affidavit against Plaintiff to be presented to be presented to the Magistrate Judge that each knew to be materially false and misleading.

magistrate for a determination of probable cause that it contained false statements. They knew the affidavit contained false and misleading statements because they were involved in every aspect of the investigation from the beginning, and knew or should have known that Plaintiff was not a member of a criminal street gang because no evidence existed that made such an assertion, and neither Plaintiff nor his motorcycle club were identified on any law enforcement database at the time of the incident in question as being in a criminal street gang, or a member of a criminal street gang.  On the date that Plaintiff was arrested and falsely charged, Defendants Chavez, Stroman, and Reyna all were privy to DPS gang databases and knew or should have known that none identified Plaintiff as a member of a criminal street gang.  Nonetheless, each Defendant allowed the false statement to become a central basis for the arrest and detention of Plaintiff.

44.     Further, Defendants Chavez, Stroman, and Reyna all knew, or should have known, that Plaintiff was not engaging in criminal conduct at Twin Peaks since the video evidence in their possession CLEARLY and UNAMBIGUOUSLY proves that Plaintiff did not participate in, nor did he encourage, the disturbance that escalated into violence.  In fact, the video evidence **proves** that Plaintiff was **not** involved, yet the Defendants acted in direct contravention of the video evidence and caused Plaintiff's constitutional rights to be violated.  Each Defendant was certainly aware that neither he, nor any other law enforcement officer, possessed knowledge that Plaintiff was a member of a criminal street gang, or that Plaintiff regularly associated in the commission of criminal activities.

Defendant's contention that Plaintiff's cause of action based on *Franks v. Delaware* is lacking in specificity is baseless.  It is difficult to imagine how Plaintiff could be more specific in establishing the falsity of the statements included in the probable cause affidavits.  Certainly, the Plaintiff has alleged facts that plausibly allow this Court to infer that his constitutional rights were violated.  Further, any law enforcement officer would have been well aware on the date of this incident that he could not knowingly or intentionally, or with reckless disregard for the truth cause an affidavit against Plaintiff to be presented to the magistrate judge that he knew to be materially false and misleading.

**4.     Plaintiff Has Sufficiently Pleaded His Fourteenth Amendment Claims**

Paragraph 103 of Plaintiff's First Amended Complaint states:

If it is determined that a Fourth Amendment violation is not sustainable, Plaintiff alternatively asserts a violation of his Due Process rights under the Fourteenth

Amendment to be free from unlawful arrest as a result of false and misleading statements that were knowingly, or with reckless disregard included in the probable cause affidavit.  The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression.

Defendant contends that Plaintiff fails to state a claim even though Plaintiff's claim is pleaded in the alternative, and only if it is determined that a Fourth Amendment violation is not sustainable.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  It is the constitutional provision that guarantees due process rights against state actors.  *See Jones v. City of Jackson*, 203 F.3d 875, 889 (5th Cir. 2000) (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989)).  "Prohibition against improper use of the 'formal [constraints] imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause."  *Jones*, 203 F.3d at 880-81 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 575 (1972)).

It is well settled that "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.'" *Cole v. Carson,* 802 F.3d 752, 765 (5th Cir. 2015) (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).  There may be a due process violation, however, when police intentionally fabricate evidence, successfully get someone falsely charged, and relief under the Fourth Amendment is unavailable.  *Id.* at 773.  The presence of probable cause does not forestall Plaintiff's options under the Fourteenth Amendment. *See id.*  at 772-73.  In *Cole,* the Fifth Circuit "agree[d] with those [circuit courts] that have found a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person."  *Id.* at 771.

In *Cole,* the defendants argued that because they had probable cause to arrest on other grounds, all other constitutional violations were effectively washed away.   The court in *Cole* recognized that a defendant's intentional violation of one's constitution rights should not be overlooked simply because the Fourth Amendment is unsustainable on other grounds.   *Cole* is the Fifth Circuit's response to what would otherwise create the anomalous situation of allowing false charges based on fabricated evidence so long as some probable cause exists on other grounds to justify an arrest.

> To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the motion that Americans enjoy the protection of due process of the law and fundamental justice. [T]he wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, . . . a reasonable officer in [the defendant's] shoes would have known his conduct violated the Constitution.  [N]o reasonable competent police officer could believe otherwise.

*Id.* at 773-74 (internal citations and quotation marks omitted).

Plaintiff has alternatively pleaded a Fourteenth Amendment violation for precisely the reason recognized by the Fifth Circuit in *Cole.*  Should it turn out that probable cause to arrest Plaintiff exists on other grounds, Plaintiff has alleged that Defendant's conduct, in particular his knowing inclusion of false and misleading statements in the probable cause affidavit for the purpose of charging Plaintiff with a first degree felony, constitutes the scenario contemplated by the court in *Cole.*

## 5.     Plaintiff Has Sufficiently Pleaded His Conspiracy Claim

Short of Plaintiff acquiring a recording device from the room in the Waco Convention Center that captured the Defendants' decision to arrest 177 people on the night of May 17, 2015, Plaintiff has provided ample facts to support a conspiracy claim.

In order to properly allege a conspiracy claim, Plaintiff must assert that 1) there was an agreement among the defendants to commit a Constitutional deprivation; and 2) an actual deprivation occurred. *Jabary v. City of Allen*, 547 Fed. App'x 600, 609 (5th Cir. 2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). To meet his pleading requirement, Plaintiff must set forth facts alleging the times, places, and other circumstances of a "private meeting" and/or secret conversation such that it can be inferred that an agreement occurred. *See id.* at 610-11. A conspiracy allegation under § 1983 allows a Plaintiff to hold defendants liable without regard to who committed the particular act. *Id.* at 609.

Plaintiff has provided this Court with facts that more than support his assertion that an agreement to deprive him of his constitutional rights took place. Indeed, as alleged in Plaintiff's First Amended Complaint, law enforcement documents explicitly state that Defendant Reyna called a meeting of all investigators around 9:00 – 10:00pm (the when) at the Waco Convention Center (the where), during which Defendant Reyna, Stroman, and Chavez (the who) decided to arrest any person that met an arbitrary criteria of clothing, patches, key chains, etc. (the what) that allegedly reflected "support" of the criminal activity that had occurred earlier in the day. (P.'s 1st Am. Compl. ¶¶ 29-31) Significantly, prior to this meeting, a decision had been made to release Plaintiff and many others. (P.'s 1st Am. Compl. ¶¶ 28, 39, 113) It can be inferred that the decision to release Plaintiff and many others would not have occurred if law enforcement believed probable cause existed to charge Plaintiff and the others with a crime. (*Id.* at ¶¶ 28, 39, 113) It was not until after the aforementioned meeting that a decision was made to reverse course, and the mass arrests were ordered. (*See id.*) Moreover, Defendant Reyna has publicly acknowledged his involvement in the investigative stage of the case. (*Id.* at ¶ 23)

As demonstrated above, Plaintiff has identified with particularity the actions taken by Defendants Stroman, Chavez, and Reyna on the night of May 17, 2015 that caused Plaintiff, and many others to be arrested without probable cause. (*See* Pl.'s 1st Am. Compl. ¶¶ 107-112) Based on the foregoing, this Court can infer that the Defendants agreed and conspired to arrest Plaintiff despite the absence of probable cause, and in violation of his constitutional rights.

**6.    Plaintiff Has Sufficiently Pleaded Facts to Show that the Violation of His Constitutional Rights was Objectively Unreasonable Given the Clearly Established Law at the Time of the Constitutional Violation**

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Throughout the Plaintiff's First Amended Complaint, and this Response to Defendant's Motion to Dismiss, Plaintiff cites to Supreme Court and Fifth Circuit authority that firmly establishes that the contours of the right were sufficiently clear that a reasonable official would understand that what he was doing violates that right.   As elaborated on throughout this brief, each cause of action alleges both the facts supporting each element of the claim, and the well-settled law upon which the right is established.   Accordingly, Defendant's claim to qualified immunity should be denied.[11]

---

[11] Except for the Defendant's contention that the requirement of particularized facts to establish probable cause is no longer well settled, it appears that Defendant's primary challenge is to whether Plaintiff has pleaded specific facts that would constitute a violation of a right, as opposed to whether the contours of the right were well settled.

## IV.   CONCLUSION AND PRAYER

For the reasons stated herein, Plaintiff has fully satisfied the standards for pleading his claims so that dismissal would be improper.  To require more is to effectively require Plaintiff to marshal an entire case worth of evidence just to "state claims upon which relief can be granted."

In the alternative, should this Court decide that Plaintiff's First Amended Complaint is deficient, he respectfully requests an opportunity to replead to correct such deficiencies.[12]

Respectfully submitted,

By: _/s/ Don Tittle_____
    Don Tittle
    State Bar No. 20080200
    don@dontittlelaw.com
LAW OFFICES OF DON TITTLE, PLLC
6301 Gaston Avenue, Suite 440
Dallas, Texas 75214
214/522-8400
214/389-1002 – Fax

*Lead Counsel for Plaintiff*

F. Clinton Broden
State Bar No. 24001495
BRODEN, MICKELSEN, HELMS & SNIPES, LLP
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 – Fax

*ATTORNEYS FOR PLAINTIFF*

---

[12] In a triumph of form over substance, Plaintiff could eliminate Defendants' claims to 12(b)(6) relief pursuant to the "independent intermediary" doctrine by simply dropping the reference to Plaintiff's indictment from a subsequent amended complaint, and thereby forcing Defendants to raise the issue pursuant to FRCP 56. Plaintiff could then be granted time to conduct discovery pursuant to FRCP 56(d) and prove that the allegations contained in his current complaint are not speculative as Defendants contend.

## CERTIFICATE OF SERVICE

I certify that on this 5st day of July, 2016, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Western District of Texas, using the electronic case filing system of the Court, and that a true and correct copy of this instrument has been served via the Court's CM/ECF system on all counsel of record:

Thomas P. Brandt
Stephen D. Henninger
FANNING, HARPER, MARTINSON
 BRANDT & KUTCHIN, P.C.
4849 Greenville Ave., Ste. 1300
Dallas, Texas 75206

*Attorneys for Abelino Reyna*

Charles D. Olson
Michael W. Wilson
HALEY & OLSON, P.C.
510 N. Valley Mills Dr., Ste. 600
Waco, Texas 76710
972/205-2389

*Attorneys for Stroman & Chavez*

  */s/ Don Tittle*  
Don Tittle